Our second case on the call of the docket today is Agenda Number 8, Number 109-469, Williams v. Board of Review. Counsel for the appellant? May it please the Court, Brian Barov, Assistant Attorney General, on behalf of the Board of Review and the Director of the Department of Employment Security. The question before the Court today is whether the plaintiff should have been granted trade readjustment allowance cash benefits available under the Trade Act of 2002 when she failed to meet a condition of eligibility by not enrolling in job training or obtaining a waiver from the training enrollment requirement within the Trade Act statutory deadline. It is undisputed that the plaintiff failed to enroll in job training or obtain a waiver within the statutory deadline because she did not receive notice that she might be eligible for such TRA cash benefits from the Department of Employment Security. It is also undisputed that the IDS did not give her notice because she was not in their system and was not on the list given to them by her former employer that she was one of the employees covered by the firm's certification under the 2002 Trade Act. The plaintiff's claims, however, that the statutory deadline for job training enrollment should be told for three reasons. One, she thinks it should be told under a 1986 federal regulation until she received notice of eligibility. Two, that the time limits governing enrollment for job training did not govern her request for a waiver of the enrollment requirement. Or three, that the enrollment requirements deadlines were told under either the doctrines of equitable tolling or equitable estoppel. I'll address each of these arguments in turn. Section 2291A5A of the Trade Act of 2002 provided that one of the conditions to receive cash benefits is that the covered employee enrolled in approved job training and that enrollment period must incur in one of two periods. It's either the 16th week after separation from employment or the 8th week after the employee's certification by the U.S. Secretary of Labor, whichever date is later. This language of Section 2291A5A, which is commonly known as the 8-16 week rule, is direct and emphatic and includes no exceptions or limitations for lack of notice or good cause. The language of the statutory deadline is directly contrary to the language of the 1986 federal regulation relied on by the appellate court and by the plaintiff to find that her claim for TRA benefits was told. This federal regulation is found at 20 CFR Section 61710B. The federal regulation expressly applies to the application for TRA cash benefits. It states that the application for TRA must be filed within a reasonable period of time after the certification determination and that a reasonable period of time means such a period of time as the individual lacks knowledge of certification. The statutory language, by contrast, places a condition on enrollment in job training, a substantive condition on enrollment in job training, which is different from an application deadline. Moreover, Section 2291A5A provides a specific deadline for enrollment from the date of certification, the 8th week after the week in which the Secretary issues the certification, while Section 61710B does not contain a specific deadline. It refers only to a reasonable period of time after publication of the determination. The Section 2291A5A is later, it's clear, it's unambiguous, and more specific than the provisions of Section of 19 U.S.C. I'm sorry, of Section 617.10B and thus must control that provision. Did they withdraw 617.10B? No, it's never been withdrawn. It's still, at least in theory, would apply to an application period because the application period is a separate period. And there's that one case we cited to the, I think both parties cited to the low case out of Pennsylvania where the court distinguished between the application period and the enrollment period. Now, in this particular case, it doesn't matter, and maybe as a practical effect, it had very, it has very, it's limited because the short period of time is provided by Congress for enrollment in, under the 816 week rule. So the question for this Court is not construing the Act, but is instead determining whether the Department construed and applied the, how they construed and applied the Act. Is that correct? Well, it's, yes, it's, this Court will have to construe the Act to determine whether the Department correctly construed the Act. And the Department primarily relied on the Department of Labor's interpretive documents in which it's required to do in construing the Act. As far as the plaintiff's contention. How much difference is there? Is there a difference here? Well, I think, yes, there is. I think this Court should give deference to the Department of Labor, their construction of the Act. It is certainly, their interpretation has been consistent and longstanding that the 816 week rule has no equitable exceptions to it. It's been that way since they first interpreted the Act in 2003, up through the 2009 amendments, which included equitable exceptions to the enrollment requirement. The Department of Labor has been consistent in finding no equitable exceptions. I think they certainly are the ones Congress gave authority to apply the law. The state agency, the Department of Employment Security, has to follow the U.S. Department of Labor's regulations. So I think this Court should certainly give considerable deference to the U.S. Department of Labor's interpretation of the statute. And the amendments to the Crate Act by Congress have no bearing on the question? No, and I think that's one where, well, it has a bearing on the question in the sense that I think it's indicative of the fact that the 2002 Act's statute is to be strictly construed. Because one of the things that the 2009 Act did is it created a new provision. It was to be applied prospectively only. And I think if you look at some of the interpretive documents, the basis for amending the 2009 Act was the problems that they had in applying these short enrollment periods. There were a number of problems. Claimants couldn't make decisions on what sort of training they wanted to get involved in. Claimants who didn't have high educational levels were somewhat reluctant to go back to school and engage in training. And there were people like the plaintiff here who the enrollment period may have run before they received notice. So Congress was clearly trying to correct a problem, but that's indicative of the fact that the 2009 Act was a change in the law, which demonstrates that the 2002 Act and the Department of Labor's interpretation of the 2002 Act was to be strictly construed. Should we read into the fact that the 2009 amendments has a sunset provision, that in fact it terminated January 1st of this year? Actually, Your Honor, it's been extended through February 13th. I don't know what the new Congress will do with it. If the 2009 Act does expire, then the 2002 Act's provisions will go back into effect, however. Should we read anything into that? I mean, the suggestion is that we should be looking at the 2009 amendments to understand the 2002 statute that's in front of us. The fact that there's a sunset provision, does that mean anything? I think, if anything, it bolsters the case that these were intended to be a change in the law. Maybe a change in the law for a temporary period, but it was certainly intended to be a change in the law, the way I would read it. The plaintiff's contention that no time limit applies to the application of the waiver of training enrollment is also foreclosed by the statutory language. Here she relies on Section 2291C of the Trade Act. This provision references the 2291A5 provisions, the enrollment provisions of the Trade Act, and there's nothing in that language that suggests that the waiver provision can be considered separately. Again, the Department of Labor's interpretive documents, and I can point to specifically, I think, the strongest areas. If you look at A60 of our appendix, Training and Employment Guidance Letter Change 3 states, eligibility for TRA requires that the worker enroll in approved training or receive a waiver of eligibility within the 816 week rule. Counsel, in looking at the Act as a whole, certainly the first section that we've been discussing, Section A is very focused, really, on timing issues, as is Section B, although I'm not sure I understand Section B, and we're really not looking at that, but that's all about timing. C, which is what you're talking about now, the waivers, has nothing in it about timing. No, but it does cross-reference particularly enrollment provisions. It says a waiver, and I believe it's 2291. The Secretary may issue a written statement to an adversely affected worker waiving the requirement to be enrolled in training described in subsection A5A of this section. Correct, and the enrollment described in subsection A5A includes the 816 week deadlines. So I would submit that that indicates that Congress intended the waiver provisions to be applied equally to the A5A requirements. In addition to that, even if you found this statute ambiguous like the Wisconsin court did, I think disconnecting the waiver of enrollment requirements would certainly undermine congressional intent, which is to move the workers into the job training as quickly as possible. Counsel, may I ask this too? You mentioned the Wisconsin case. Was the Wisconsin case a reviewing court, and was it published? Yes, that was a published reviewing court decision. There was the two cases. There was a case out of Michigan which found that the waiver provision, the Dijkstra case, which found that the waiver provision did not have a deadline in it, and then there's the contrary case from Wisconsin, which was, I believe, an appellate court decision, also finding that the statute was ambiguous. I mean, I think just in terms of how you would apply the waiver provision, if it wasn't tied to the timing requirements of the enrollment provision, would be extraordinarily difficult. For example, one of the reasons you get a waiver is if there's no funding available for a program or no suitable program available. And if you could come in after the enrollment deadline and say, I want a waiver, the question then becomes, well, what is the operative date of what you're seeking a waiver from? In addition, I think it would certainly allow the possibility of gaming the system to seek the TRA cash benefits and sort of circumvent the enrollment requirement. Again, every interpretive document issued by the Department of Labor has supported this view of the act and those provisions are certainly entitled to deference. And so certainly there is no basis under the statute for reading any sort of equitable exception into the statute. Now, the plaintiff also brings up two equitable remedies, equitable tolling and equitable estoppel. Neither of those apply in this case. Equitable tolling generally applies only to suits against the government, in the same way that it applies to suits against private individuals. This, again, is a condition of receiving a benefit. The enrollment deadline is not a suit against the government. The 816 rule is not analogous to a statute of limitations. I just want to make one additional point here. When I was reading the cases over this weekend, I misstated, I think, or mistakenly stated this effect of the federal statute in the Truong and the Lady Kelly case. I noted there that this was 19 U.S.C. 2401E. I think I referred to it as an administrative appeal limitation. In fact, it's the initial application. It was the time limit for the initial application for TRA benefits, but that doesn't really change the analysis because, again, Section 2401E, like 2291A5A, distinguishes between application deadlines and conditions. If you look at 2401E, you see there's a 90-day time period for filing your application for those TRA benefits, and then the statute sets out various conditions to receive the benefits, just like the enrollment provisions in 2291A5A are enrollment conditions. In addition, equitable tolling doesn't apply under the Brockham rule. The 816 week rule is emphatic, mandatory, and technical. The benefits program provided by the Trade Act of 2002 were part of a nationwide program designed to retrain workers quickly and is designed to be applied uniformly across the country. As such, it does not lend itself to individual cases of equitable tolling. There was no affirmative government misconduct here. Some courts have talked about equitable tolling applying only when there's government misconduct. There's been no affirmative government misconduct here. The Department was unaware of plaintiff status as an employee certified under the Trade Act. Equitable estoppel does not apply for the very simple reason here there was nothing to estop. The Department of Employment Security personnel made no affirmative misrepresentations. Again, it's undisputed that the plaintiff was not on the list provided by her employer to the Department of Employment Security. In addition, equitable estoppel does not apply to government benefits claims. The Schweiker v. Hansen case I think is key in that regard. In some, while plaintiff's cases may be sympathetic, under the laws that existed in 2006 when her eligibility for cash benefits expired, she failed to enroll in an approved program under the terms of the 816 week rule. The rule applies without exception, and the Board of Review correctly construed and applied this provision to the plaintiff's case. The appellate court's decision should be reversed, and the Board of Review's decision should be affirmed. Counsel, we have a couple questions. Sure. First is, if I understand you correctly, it's because the employer did not provide the name of this employee to your agency? Correct. And that's why there was no notice to Ms. Williams? Correct. That's what the facts showed in the record, yes. And there's no dispute about that? I don't believe so. The testimony at the hearing was, and I believe it came actually through claimant and claimant's representative, that Chicago Casting, her employer, did not provide her name on the list. But then there's also no dispute, obviously, then, the conclusion is she never got noticed. Correct. So, in essence, is your argument that when an employee in this kind of a context, this situation, they just fall through the cracks and it's just too bad? Unfortunately, when it comes at least to the cash benefit aspect of it, yes. I mean, she can still enroll in training under these provisions. But under the law, a welfare benefit provision such as this, whether it's a condition, simply does not toll against the state. There's no equitable stop or tolling against the state. And the other question I had is, you've made several references to the Department of Labor. You're always referring to the U.S. Department of Labor. I'm sorry, yes, Your Honor, the U.S. Department of Labor. And in terms of their interpretive, whatever the phrase is, guidebook, manual, and so forth, is there anything that's in the briefs, because I'm not sure that I saw this, that talks about their interpretation on whether or not this regulation 617.10b still exists, survives or not? The regulation still exists. I know it does. I'm saying does the interpretation? No, there's nothing. They don't mention it in any of their interpretations. So is there any import to that? I mean, it's still on the book. It's still on the book. It's not been rescinded. Correct. I think it's – even though it's not in their interpretive documents, I think because of the – it directly contradicts the statute. The statute has to win in those circumstances, whether they've gone back and revisited it or not. I think it's still on the books because at least technically there's a distinction between the application period and the enrollment period. And while under the 2002 Act it may have little practical effect, if any practical effect, it still exists. And it would certainly exist probably – it might become more important under the 2009 Act if that were to survive. Mr. Barrow, you haven't mentioned this in your oral argument, but I believe it's in your brief, what I'll call a policy argument. Do you recall the argument that the Secretary of Labor may even suspend or terminate the agreement with the state for noncompliance if we were to find, as the appellate court did here? I don't know exactly what the effect of that would be, Your Honor. I guess we'd have to – that might be a matter for another bit of litigation. You remember the argument. Yes, I remember the argument. It's an important argument because it was important that this court review this case. Given that the 2009 amendment, which I know your position is, wasn't in effect, it was not in effect at that time, but given that that amendment, the most recent amendment, is consistent with the appellate court's decision, is there really any danger that the Secretary of Labor will determine that Illinois is not in compliance with the agreement? Your Honor, we act as agents of the U.S. Department of Labor under our agreement. If they didn't take this seriously, then we wouldn't be here today litigating this matter. I don't know if they'll – they may not terminate the agreement, but certainly there could be penalties. And that's really still an open question is how this would apply. We might have to repay the government. There might be other – there's other particular consequences. But, again, that's simply – that's this – you know, what the effect would be is, you know, is not known. So in any event, I would just ask, again, that the appellate court's decision be reversed and the Board of Review's decision affirmed. Before you leave, just to follow up on Justice Thomas's question, your opponents have argued in their brief that your reference to this agreement and so forth should be stricken from your brief because it's not in the record. And your reply brief did not respond to their argument that even if down the road she were found to be ineligible to state, there could be some kind of repayment. And you didn't respond to that at all. So just in the context of assuming arguendo, how do you respond to that? Your Honor, I think I made the point, and I believe I made the point in the reply brief, this Court can certainly take judicial notice of the agreement, which it certainly can. It was part of our petition for rehearing. It was part of our petition for leave to appeal to this Court. And, again, as to whether – what the Court – maybe I – the second part of your question, I don't – Well, maybe – I hope I understand this correctly, and counsel for the employee can clarify if I'm wrong, but that even if she were found to be ineligible at a later date to these TRA benefits, that if there were – I don't know if you'd call it an overpayment or whatever, but there could be a repayment back. Right. We could seek repayment. In fact, we would probably have to seek repayment back. And would that not cure this problem that you're referring to? Because if this Court affirms the appellate court's decision, then we would have to pay – we would probably have to pay – we might have to pay the federal government back. They would have to come out of state funding rather than federal funds. That would be sort of the minimalist adverse of consequence. But the consequences can go up from there, from termination of the agreement or, you know, denial of the tax credit to employers. But this is the Department of Labor's position, that this is the correct construction of the statute. Thank you. Thank you. Good morning, Chief Justice, Justices, Counsel. May it please the Court, my name is Rachel Elizabeth Rosenthal from the Legal Assistance Foundation of Metropolitan Chicago, and I represent Ms. Williams. There is no dispute that Regina Williams was laid off because her factory closed due to foreign competition. And there is no dispute that Ms. Williams was a worker eligible for Trade Readjustment Assistance, or TRA. And there is no dispute that IDES did not advise her about TRA, her eligibility, or the deadlines for receiving it, as it was required to do in two different places in the statute. First, when she applied for unemployment benefits, and second, when she was certified eligible by the Department of Labor. The appellate court decision finding Ms. Williams eligible for TRA benefits should be affirmed. First, a proper regulation allows extension of the deadlines for good cause. There is good cause here. IDES did not notify Ms. Williams of the deadlines pursuant to its own statutory and regulatory obligations. Second, even if the regulation does not apply, federal principles of equitable tolling and equitable estoppel apply in this case, again, because IDES did not provide the required notice to Ms. Williams. In the alternative, this case should be remanded to IDES to process Ms. Williams' training waiver request, because the enrollment and training deadline does not apply to waivers. And again, finally, this court could still decide to dismiss this matter as moot, because IDES has paid Regina Williams all of the benefits to which she is entitled. First, the appellate court was correct in holding that the regulation allows extension of the deadline for good cause. The regulation explains that lack of knowledge of the certification is good cause for a late application. The 2002 amendments to the Trade Act do not supersede the good cause regulation, as the Board argues. The statute's plain language does not conflict with the regulation. The statute reads, payments of TRA benefits shall be made if. It doesn't say payments shall only be made if. The statute reads permissively, not preclusively. There's nothing in the plain language to support the Board's assertion that this language is somehow strict. In addition, the statute must be read in light of all of its provisions, not just in a vacuum. This includes the provisions of Section 2275 and Section 2311, which require the Department of Labor and the state agency, in this case IDES, to inform workers of TRA benefits and the deadlines to apply for them. Section 2291, the deadline section, is silent as to what happens when the agency violates its obligation to provide notice under Section 2311, and the regulation seeks to fill the gap of that silence. It is a reasonable, permissible rule, and it is entitled to deference. It harmonizes the deadline provisions of the Act with the notice provisions of the Act. And it also effectuates the purpose of the Act, which is to assist workers displaced by foreign competition. While the appellate court rightly held that the good cause regulation applied to the 816 deadline, the Board argues that the regulation is not for enrollment and training, but just for applications for TRA. This is a false distinction. There are several types of TRA applications.  and applications for waivers. Those are just three types. You have to apply for training to enroll in training. So a provision whose purpose is to extend the deadline when a worker doesn't get notice would have no effect if it didn't apply to the training requirements as well. Any worker who had no notice of the deadlines would be just as unable to apply and enroll in training, apply for and enroll in training, as to apply for other types of TRA benefits. So it doesn't make sense to consider that the Department of Labor even thought of applying for training and enrolling in training as separate events, let alone that it would want to extend the deadline in the case of lack of notice for one and not for the other. The regulation wants to create an exception for lack of notice, and that does not conflict with the statute. As Mr. Barov finally said, there is nothing in the Department of Labor's guidance letters or subsequent regulations to say anything about the good cause regulation not applying to the 816 deadline. The Department of Labor has repeatedly, at least three times since the 2000 amendments, reviewed the regulations and has never gotten rid of the good cause exception and never issued any guidance to say that the good cause regulation does not apply to the 816 deadline. The board also argues that the appellate court's decision will jeopardize tax credits and cause the Department of Labor to cancel its agreement with the state. But there is no evidence that the appellate court's decision or any decision of this court finding Ms. Williams eligible for benefits would bring IDES out of compliance with the agreement. The appellate court narrowly found that a properly promulgated regulation allowing a good cause exception to the 816 deadline applied when IDES did not give the notice it was required to by statute. The appellate court did not hold, as the board implies, that the 816 deadline is invalid. Nothing about this decision takes Illinois out of compliance with any statute, regulation, or guidance letter or even the agreement itself. The board has cited nothing from the Department of Labor to the contrary.  because it did not comply with its explicit duty under statute, regulation, and the agreement itself to advise Ms. Williams about TRA benefits and deadlines. The board has assumed harsh consequences for an alleged violation of the agreement while blithely assuming that its own undisputed violation of the agreement will go unpunished. Because the appellate court's holding is in accordance with the law, the state should suffer no adverse consequence from the Department of Labor. Turning to my second argument, Ms. Williams should get TRA benefits because although she missed the 816 deadline, equitable principles read into every federal statute told the deadline. There are two equitable principles that can apply in this case, tolling and estoppel, and I will discuss each separately. Equitable tolling is available when the claimant, though diligent, Before you get into the equitable arguments, the 2009 amendment, Yes, Your Honor. Are you going to address at a later point in time or was your plan to address at a later point in time the prospective nature of those amendments? I wasn't planning to, Your Honor, because everyone concedes that the 2009 amendments are not retroactive. They have no particular bearing on our argument here that the 816 regulation applies or that estoppel and tolling apply in the case. More specifically then, does the prospective application of the 2009 amendments impact on the appellate courts finding that the amendment merely clarified what Congress's intent had been all along? Your Honor, the appellate court did find that the 2000 amendments were clarifying and that is a reasonable interpretation of the 2009 amendments. Even with the prospective language? Mr. Barof considers it a change in the law. I don't think that that's necessarily true. There's not necessarily a lot of legislative history that gives us guidance as to what Congress was thinking exactly when it enacted the 2009 amendments. Clearly there was concern that the deadlines were extremely short and it was difficult for people to enroll in time and to understand what they were supposed to be doing and when. But that doesn't necessarily mean that the 2009 amendments are a change in the law. Congress may have been aware of the controversy over interpreting this deadline that many courts were interpreting it strictly. Some courts weren't interpreting it strictly and they wanted to make sure that the statute itself said no two ways about it. We want there to be an exception for good cause. But I don't think that that necessarily evinces an intent that previously the good cause regulation didn't provide that. They were just making it explicit to make sure the states were following it. Turning to my second argument. Equitable tolling is available when a claimant, though diligent, could not have discovered essential information in time to make her claim. There is no requirement of misconduct or bad faith on the part of the defendant. In Irwin v. Department of Veterans Affairs, the United States Supreme Court held that tolling is presumed in every federal deadline and Congress is presumed to know this and draft legislation in light of this presumption. In this case, Ms. Williams meets the standard for tolling of the 816 deadline because IDS failed to notify her as it was required to do by law and lack of required notice is the quintessential example of when tolling applies. Now, Mr. Baroff has argued that the tolling doesn't apply here because the 816 deadline is not a statute of limitation. This argument ignores many federal cases that find that tolling applies to any kind of deadline. For example, in Young, the United States Supreme Court found that tolling applied to a three-year look-back period against the IRS for the IRS to claim a debt that was not dischargeable in bankruptcy. The Board also ignores that the Court of International Trade, which is charged with hearing Trade Act cases, has applied tolling to both the Act's appeal deadlines and its application deadlines. And as he pointed out, Lady Kelly, in the Lady Kelly and the Truong case, the Court found that equitable tolling applied to a 90-day period to apply for benefits. And despite many opinions from that Court that tolling applies to deadlines in the Trade Act, the Board relies on two non-TRA cases where the U.S. Supreme Court found the presumption in favor of equitable tolling is rebutted. I'll discuss each in turn. In Brokamp, tolling did not apply to a tax code because the deadlines were repeated, complex, and interdependent and affected substantive liabilities. This statute doesn't do that. The language is permissive. It is not technical. It is not complex. There is a 45-day extension for extenuating circumstances, but that does not necessarily exclude equitable tolling. Because Congress charged the state agency with a specific notice requirement, we have to assume that the worker confronting the deadlines in the Trade Act actually knew about them because she would have been notified as Congress intended her to be. Either way, the United States Supreme Court recently held in Holland that inclusion of an explicit tolling provision does not necessarily preclude equitable tolling. And in the other case they cite beggarly, the Court rejected tolling in light of an unusually generous 12-year statute of limitation in a quiet title action. And that's in stark contrast to the deadline in this case, which is a matter of weeks. The key in all of these cases is to look at, as the U.S. Supreme Court does, at the underlying purpose of the statute and ask whether Congress expressed an intent that tolling not apply. Nothing about the Trade Act or this deadline precludes tolling. The Act's purpose is to assist workers who've lost their jobs and to make sure that they do not unfairly bear the burden of liberalized trade policies. And the Act repeatedly emphasizes the importance of notice to the worker. Allowing tolling of the 816 deadline when there is no notice supports that purpose, and it should be applied in this case. Now, the Board also argued in its brief that Ms. Williams was not diligent because she heard about TRA from a co-worker in October, but she didn't apply for benefits until December. The Board has misstated, however, how diligence is considered when there is a duty to provide notice. In Cherong, the Court rejected a theory of inquiry notice, that the worker has a duty to make inquiries of the agency about their possible eligibility, and held that when Congress makes a law that an agency has a duty to notify, it's made a judgment that the benefit is obscure enough that the worker will remain justifiably ignorant of it until they are actually notified. So the Board is trying to shift the burden to Ms. Williams to inquire about the deadline when Congress explicitly made it the agency's burden to inform her. But it's undisputed that Ms. Williams applied for TRA the same day that the agency did actually inform her. Turning to estoppel, IDS should be equitably estopped from denying Ms. Williams benefits because it failed in its statutory duty to inform her about TRA deadlines when she applied for unemployment insurance. Unlike tolling, estoppel requires an element of fault from the party you are seeking to estop. That fault exists here because IDS did not meet its obligation to inform Ms. Williams about TRA pursuant to Section 2311, which says that the state agency, this is a quote, shall advise each worker who applies for unemployment insurance of the benefits under this part and the procedures and deadlines for applying for such benefits. This is separate from the related requirement that IDS then advise adversely affected workers to apply for training. IDS did neither. In its reply, IDS includes a 2005 pamphlet in an attempt to show that Ms. Williams was notified about TRA. While there is no evidence in the record that Ms. Williams received this pamphlet, it does not matter because the pamphlet is undisputedly insufficient under 2311. The pamphlet is at supplemental appendix number 48 and it says Trade Assistance Benefits. Workers who lose their jobs or who experience reduced work hours and wages as a result of increased imports or the shifting of their jobs abroad may qualify for additional benefits under the Trade Reform Act of 2002. The worker group must be certified as eligible by the Federal Department of Labor. The benefits administered by IDS include income support, the health coverage tax credit, and alternative trade assistance for older workers. Individuals should contact the local Illinois Department of Employment Security office where they filed their unemployment claim or to find the nearest office call. It says nothing about procedures. It says nothing about deadlines. 2311 says that the state agency shall advise each worker who applies for unemployment insurance of the benefits under this part and the procedures and deadlines for applying for such benefits. IDS's own pamphlet, which it submitted and invited this court to judicially notice, establishes a clear violation of 2311 and section 617.4 of the regulations. The board also implies that ESTOPL does not apply against the government in public benefits cases. It cites the Schweiker case. The U.S. Supreme Court has never held that to be true and its opinion in Schweiker actually supports applying ESTOPL in this case. Schweiker made clear that ESTOPL could be applied against a government agency in the appropriate circumstance. It did decline to apply ESTOPL in that case because the government agent there who failed to advise a claimant about a benefit only violated an internal manual and the court distinguished that from a situation where an employee violates a regulation that has the force of law. Here, of course, IDS's failure to advise Ms. Williams of the 816 deadline violated both a federal statute and a federal regulation. And unlike Schweiker, in Schweiker the claimant was not forever foreclosed from getting benefits. The error here, Ms. Williams would be forever foreclosed from getting benefits. The board has also expressed concern that allowing ESTOPL in this case endangers the public fisc and opens up a potential floodgate of litigation and that's not the result of the narrow holding we seek here. Unlike the cases the board cites, Ms. Williams is not seeking benefits to which she would not otherwise be entitled. She's not claiming that she should have gotten $500 a week in TRA because some employee promised her that that's what she would get when, in fact, she was only entitled to $294 a week. She only wants what the law entitles her to get, what the law says that she should get. Second, we do not seek a holding that the government is estopped every time an employee fails to inform a claimant about benefits or that, as the board put it, we expect government employees always to be perfect. The lack of information provided to Ms. Williams was not the act of one rogue employee with a vague duty to assist claimants. It was the institutional failure of an entire agency to discharge its duties in accordance with the law. That is why ESTOPL is appropriate in this case. I'm going to rely on what's written in our briefs with regard to the waiver argument. And in closing, to ensure that the statute is not unjust, we respectfully request this honorable court affirm the decision of the appellate court and find Ms. Williams eligible for benefits. Thank you. Thank you, counsel. Thank you, Your Honors. Mr. Barra, Ms. Rosenthal seemed to indicate that IDES has violated its statute, and accordingly it would be in violation of the act as much as not following the interpretation of the U.S. Department of Labor would be in violation. Would you comment on that? Certainly, Your Honor. The plaintiff insists on making this case about fault, and it's not a case about fault. And just to give you some perspective, the chronology is important. Ms. Williams applied for unemployment benefits on April 21, 2006. The petition for certification under the Trade Act was not filed until May 1, 2006. So when Ms. Williams initially filed for unemployment benefits, there was no certification for them to give notice of. If you look at Section 2311, if you look at Section A2, A2 states, where appropriate but in accordance with subsection F of this section, will afford adversely affected workers testing, counseling, referral to job training, et cetera, and placement services. Section 2311, this is 19 U.S.C. 2311, F then provides that each state agency carrying out subsection A2 advise each worker who applies for unemployment. So under the statute itself, it requires notice where appropriate. Section 617.4DII of the Federal Regulations, that's 20 CFR 617.4DII. The state shall satisfy this requirement, meaning the notice requirement, by obtaining from the firm or other reliable source the names and addresses of all workers who are partially or totally separated from adversely affected employment. That's exactly what the Department did here. It relied on the list of employees certified under the Act. Unfortunately, the plaintiff was not one of those employees. She fell through the cracks, as this Court has noted. So this is not a case about who's more at fault, the employer or the Department of Employment Security. It's about what Congress intended in creating these enrollment requirements. And Congress intended, and this again is in the Department's interpretive documents, the training and employment guidance letter and the manual, Congress wanted to move people into training and job training as quickly as possible. That's what they intended in 2002. Now, we can debate the efficacy of that. I mean, obviously Congress in 2009 decided this wasn't such a good idea because they liberalized the provisions for enrollment. But it doesn't mean that Congress didn't fully intend in 2002 in passing the Act to have strict enrollment requirements. So when you look at what Congress intended in this case, clearly they intended these enrollment requirements to be strictly applied. Now, counsel also suggests that the language is not emphatic, but if you look at 2291A5, the enrollment conditions state no later than the latest of the 816-week rule. I don't know how much more emphatic you can be. The basis of the mootness argument that really wasn't really delved into, has there been a payment made after the appellate court decision? Yes. Payments were made because, again, under the regulations we're required to make payments when there's an adverse decision. Okay. We can recoup. We're required to recoup those provisions if the case is reversed. But it's because of that requirement that you would argue that it is not moot? It's because of that requirement. And also I think that, as we pointed out in our motion, I think there is another case pending that's certainly currently stayed right now in the circuit courts involving the same issue. And, of course, we don't know what Congress is going to do with this statute, whether it's going to still be, whether after February 13th, that statute may be back in effect. So the mootness argument, I think, has been resolved. I don't think we need to really revisit that at this point. Nothing has changed in that regard. In your PLA, you indicated some dire consequences if the appellate court opinion were allowed to stand. And your argument, I guess, is consistent with what the U.S. Department of Labor's interpretation of this would be. Is your argument, then, that we are constrained to follow and interpret this according to the U.S. Department of Labor when we have no discretion to interpret the Act? Or if we interpret the Act differently following the appellate court, could you not make the argument to the Department of Labor that you are complying with the Act, as indicated by the Supreme Court of Illinois? That's, I don't want to get into speculation about what will happen in the future, Your Honor. But that, no, I don't, it's not our position today that you are, that this Court is constrained by the Department of Labor's interpretation. This Court, but this Court should certainly give deference to the Department of Labor's interpretation. But your argument is if we follow it, you believe that the State would be violating the Act and lose the benefits. I think, however this Court rules, we would certainly be in a better position to make the case to the Department of Labor that we are in compliance with the Act. The, let's see, as far as the equitable, in general, as far as the application of equitable relief in this case, there's a reason that equitable estoppel doesn't apply. And I think the same reason can be applied to equitable tolling, is that particularly in a benefits case, there's thousands of government workers dealing with thousands of people. Any mistake in, any mistake in, you know, action or inaction by the government can affect the public fisc greatly. It's certainly, unfortunately given a choice between, you know, stopping the government and stopping the individual, I think the law is clear that the estoppel does not run against the government in these types of cases. For that reason, again, this is, you know, regardless of who is at fault, the law is clear on this matter that equitable estoppel and equitable tolling should not apply here. Thank you. Thank you, Counsel. Case number 109469. Regina Williams versus the Board of Review.